

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

Jeffrey J. Izant
Assistant United States Attorney
Jeff.Izant @usdoj.gov

36 South Charles Street
Suite 400
Baltimore, MD 21201-3119

DIRECT: 410-209-4982
MAIN: 410-209-4800
FAX: 410-962-0716

September 4, 2018

Katherine Tang Newberger
Senior Litigation Counsel
Office of the Federal Public Defender
100 S. Charles St., Tower II, 9th Fl.
Baltimore, MD 21201

Re:     <u>United States v. Gary Keith Pinkowski, Jr.</u>, Criminal No. GLR-17-0673

Dear Counsel:

This letter, together with the Sealed Supplement, confirms the plea agreement (the "Agreement") that has been offered to your client, Gary Keith Pinkowski (hereinafter the "Defendant"), by the United States Attorney's Office for the District of Maryland (the "Office"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. If this offer has not been accepted by **Monday, September 17, 2018**, it will be deemed withdrawn. The terms of the Agreement are as follows:

<b><u>Offenses of Conviction</u></b>

1.      The Defendant agrees to waive indictment and plead guilty to Counts One and Two of a two-count Information charging the Defendant with possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2). The Defendant admits that the Defendant is, in fact, guilty of the offense, and will so advise the Court.

<b><u>Elements of the Offenses</u></b>

2.      The elements of the offenses to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows: That on or about the date alleged in the Information, in the District of Maryland –

a.      The Defendant knowingly possessed and knowingly accessed with intent to view, material that contained an image of child pornography as defined in Title 18, United States Code, Section 2256(8);

b.      The Defendant knew that the image constituted child pornography;

Rev. August 2018

c.      The material had been mailed, or shipped or transported using any means or facility of interstate or foreign commerce, or in or affecting interstate or foreign commerce, by any means, including by computer;

d.      The image of child pornography involved a prepubescent minor or a minor who had not attained 12 years of age; and

e.      The Defendant had a prior conviction under the laws of any State relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward, or the production, possession, receipt, mailing, sale, distribution, shipment, or transportation of child pornography.

## Penalties

3.      The maximum penalties provided by statute for the each offense to which the Defendant is pleading guilty are as follows:

| Count | Statute | Min. Prison | Max. Prison | Supervised Release | Max. Fine | Special Assessments |
|-------|---------|-------------|-------------|--------------------|-----------| --------------------|
| One | 18 U.S.C. § 2252(a)(5)(B), (b)(2) | 10 years | 20 years | Min: 5 years Max: life | $250,000 | 18 U.S.C. § 3013(a): $100; 18 U.S.C. § 3014(a): $5,000 |
| Two | 18 U.S.C. § 2252(a)(5)(B), (b)(2) | 10 years | 20 years | Min: 5 years Max: life | $250,000 | 18 U.S.C. § 3013(a): $100; 18 U.S.C. § 3014(a): $5,000 |

a.      *Prison*:  If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

b.      *Supervised Release*:  If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment as permitted by statute, followed by an additional term of supervised release.

c.      *Restitution*:  The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 2259, 3663, 3663A, and 3664.

d.      *Payment*:  If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d).  The Defendant may be required to pay interest if the fine is not paid when due.

Rev. May 2018

2

e.      *Forfeiture*: The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

f.      *Collection of Debts*: If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a schedule of payments, the Defendant agrees that: (i) the full amount of the fine or restitution is nonetheless due and owing immediately; (ii) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (iii) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control. Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns. The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

## Waiver of Rights

4.      The Defendant understands that, by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

a.      The Defendant has the right to have the case presented to a Grand Jury, which would decide whether there is probable cause to return an indictment against the Defendant. By agreeing to proceed by way of Information, the Defendant is giving up that right, and understands that the charges will be filed by the United States Attorney without the Grand Jury.

b.      If the Defendant had pleaded not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

c.      If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

d.      If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses

Rev. May 2018

in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

    e.  The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

    f.  If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed that would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

    g.  By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" provisions below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

    h.  If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced case, and the Court will find the Defendant guilty.

    i.  By pleading guilty, the Defendant also will be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The Defendant recognizes that, if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

## Advisory Sentencing Guidelines Apply

    5.  The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551–3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991–98. The Defendant further understands that the Court will impose a sentence

Rev. May 2018

pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

### Factual and Advisory Guidelines Stipulation

6.      This Office and the Defendant stipulate and agree to: (i) the Statement of Facts set forth in Attachment A, which is incorporated by reference herein; and (ii) the following applicable sentencing guidelines factors:

Offenses of Conviction/Group One:
Possession of Child Pornography – 18 U.S.C. § 2252A(a)(5)(B)

a.      *Base Offense Level:*   Pursuant to United States Sentencing Guidelines ("U.S.S.G.") §2G2.2(a)(2), the base offense level for possession of materials containing child pornography is 18.

b.      *Prepubescent Minor or Minor Under 12:*   Pursuant to U.S.S.G. §2G2.2(b)(2), there is a 2-level increase because the material the Defendant possessed involved a prepubescent minor or a minor who had not attained the age of 12 years. [Subtotal: 20.]

c.      *Pattern of Activity*:  Pursuant to U.S.S.G. §2G2.2(b)(5), there is a 5-level increase because the material the Defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor. [Subtotal: 25.]

d.      *Use of Computer*:  Pursuant to U.S.S.G. §2G2.2(b)(6), there is a 2-level increase because the offenses involved the use of a computer or an interactive computer service for the possession, transmission, receipt, or distribution of the material, or for accessing with intent to view the material. [Subtotal: 27.]

e.      *Number of Images:*  Pursuant to U.S.S.G. §2G2.2(b)(7)(A), there is a 2-level increase because the offenses involved at least 10 images, but fewer than 150 images. [Subtotal: 29.]

f.      The adjusted offense level is 29.

Relevant Conduct/Group Two:  Sexual Exploitation of a Child – 18 U.S.C. § 2251(a), (e)

g.      The Statement of Facts set forth in Attachment A to this Agreement specifically establishes the commission of additional offenses other than that to which the Defendant has agreed to plead guilty. Pursuant to U.S.S.G. §1B1.2(c), those additional offenses are treated as if the Defendant had been convicted of additional counts charging those offenses.

h.      *Base Offense Level*:  Pursuant to U.S.S.G. §2G2.1(a), the base offense level for sexual exploitation of a child is 32.

Rev. May 2018

i.  *Minor Under 12*:  Pursuant to U.S.S.G. §2G2.1(b)(1)(A), there is a 4-level increase because the offenses involved a minor who had not attained the age of twelve years. [Subtotal 36.]

j.  The adjusted offense level is 36.

### Grouping

k.  Pursuant to U.S.S.G. §3D1.4, the starting point for calculating the combined offense level is 36, derived from Group Two.

l.  Pursuant to U.S.S.G. §3D1.4(a) and (b), Group Two gets 1 Unit, and Group One gets ½ additional Unit.  Because there are, therefore, 1½ Units, 1 level is added pursuant to U.S.S.G. §3D1.4.

m.  The combined offense level is 37.

### Acceptance of Responsibility

n.  This Office does not oppose a 2-level reduction in the Defendant's adjusted offense level pursuant to U.S.S.G. §3E1.1(a), based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct.  This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional 1-level decrease, in recognition of the Defendant's timely notification of the Defendant's intention to enter a plea of guilty.  This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. §3E1.1(a) and may decline to make a motion pursuant to U.S.S.G. §3E1.1(b), if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offenses; (iii) gives conflicting statements about the Defendant's involvement in the offenses; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way.

o.  Accordingly, the final combined offense level is 34.

p.  There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level.  Specifically, the Defendant understands that the Defendant's criminal history could alter the final offense level if the Defendant is determined to be a career offender or if the instant offense was a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income.

7.  There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level.  Specifically, the Defendant understands that the Defendant's criminal history could alter the final offense level if the Defendant is determined to be a career offender or if the instant offense was a

Rev. May 2018

part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income.

8.      Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

## Rule 11(c)(1)(C) Plea

9.      The parties stipulate and agree pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) that a sentence of **288 months' (24 years) imprisonment** in the custody of the Bureau of Prisons is the appropriate disposition of this case, taking into consideration the nature and circumstances of the offense, the Defendant's criminal history, and all of the other factors set forth in 18 U.S.C. § 3553(a). This Agreement does not affect the Court's discretion to impose any lawful term of supervised release or fine or to set any lawful conditions of supervised release. In the event that the Court rejects this Agreement, except under the circumstances noted below, either party may elect to declare the Agreement null and void. Should the Defendant so elect, the Defendant will be afforded the opportunity to withdraw his plea pursuant to the provisions of Federal Rule of Criminal Procedure 11(c)(5). The parties agree that, if the Court finds that the Defendant engaged in obstructive or unlawful behavior and/or failed to acknowledge personal responsibility as set forth herein, neither the Court nor the Government will be bound by the specific sentence contained in this Agreement, and the Defendant will not be able to withdraw his plea.

## Sex Offender Registration and Additional Special Assessment

10.     The Defendant understands and agrees that, as a consequence of the Defendant's conviction for the crime to which the Defendant is pleading guilty, the Defendant will be required to register as a sex offender in the place where the Defendant resides, is an employee, and is a student, pursuant to the Sex Offender Registration and Notification Act ("SORNA"), and the laws of the state of the Defendant's residence. Failure to do so may subject the Defendant to new charges pursuant to 18 U.S.C. § 2250.

11.     Unless the Defendant is indigent, the Defendant must pay an additional special assessment of $5,000 for each count of conviction pursuant to 18 U.S.C. § 3014.

## No Contact with John Doe

12.     While incarcerated and throughout the entire term of his imprisonment, the Defendant will not: (a) make any contact with John Doe, as identified in the attached Statement of Facts, or the immediate family of John Doe, or (b) take any steps whatsoever to locate John Doe, or the immediate family of John Doe. The Defendant agrees to the entry of a Protective Order regarding any contact with John Doe or his immediate family. The Defendant specifically agrees that this provision shall continue following his release and will be part of any supervised release conditions ordered by the Court at the time of sentencing. If the Defendant does not fulfill this provision, it will be considered a material breach of this Agreement, and this Office may seek to

Rev. May 2018

be relieved of its obligations thereunder. The Defendant waives and agrees to waive any right to challenge any prosecution based on the statute of limitations or double jeopardy, and knowingly and voluntarily agrees to toll the limitations period through the end of his incarceration and supervised release.

### Forfeiture

13.     The Defendant understands that the Court may enter an Order of Forfeiture as part of the Defendant's sentence, and that the Order of Forfeiture may include assets directly traceable to the offenses, substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offenses.

14.     Specifically, but without limitation on the Government's right to forfeit all property subject to forfeiture as permitted by law, the Defendant agrees to forfeit to the United States all of the Defendant's right, title, and interest in the following items that the Defendant agrees constitute money, property, and/or assets derived from or obtained by the Defendant as a result of, or used to facilitate the commission of, the Defendant's illegal activities:

        a.     Black digital camera;

        b.     16 GB SanDisk SDHC card;

        c.     16 GB SanDisk SDHC card;

        d.     Black 32 GB SanDisk Cruzer Glide USB drive;

        e.     Green Baltimore County Public Library USB drive;

        f.     Green 64 GB SanDisk Cruzer Dial USB drive; and

        g.     Gray Samsung Verizon flip phone, model: SCH-U310, FCC ID: A3LSCHU310.

15.     The Defendant agrees to consent to the entry of orders of forfeiture for the property described herein and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2, and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding forfeiture during the change of plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

16.     The Defendant agrees to assist fully in the forfeiture of the above property. The Defendant agrees to disclose all assets and sources of income, to consent to all requests for access to information related to assets and income, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including executing all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are made available for forfeiture.

Rev. May 2018

17.     The Defendant waives all challenges to any forfeiture carried out in accordance with this Agreement on any grounds, including any and all constitutional, legal, equitable, statutory, or administrative grounds brought by any means, including through direct appeal, habeas corpus petition, or civil complaint. The Defendant will not challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Agreement, and will not assist any third party with any challenge or review or any petition for remission of forfeiture.

**Restitution**     Statement of Facts (KTN) JJI (G.P.)

18.     The Defendant agrees that, pursuant to 18 U.S.C. §§ 2559, 3563(b)(2), 3583(d), 3663, 3663A, and 3771, the child identified in the ~~Information~~ as John Doe is entitled to mandatory restitution. Restitution could include medical bills, compensation for time missed from work, and counseling costs (including travel) for any of the victims related to the incident, if any such costs exist or are reasonably projected. The total amount of restitution shall be due immediately and shall be ordered to be paid forthwith. Any payment schedule imposed by the Court establishes only a minimum obligation. The Defendant will make a good faith effort to pay any restitution. Regardless of the Defendant's compliance, any payment schedule does not limit the United States' ability to collect additional amounts from the Defendant through all available collection remedies at any time. The Defendant further agrees that the Defendant will fully disclose to this Office, the probation officer, and to the Court, subject to the penalty of perjury, all information (including but not limited to copies of all relevant bank and financial records) regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution. If the Defendant does not fulfill this provision, it will be considered a material breach of this Agreement, and this Office may seek to be relieved of its obligations under this Agreement.

### Waiver of Appeal

19.     In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

a.     The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute, to the extent such challenges legally can be waived.

b.     The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional

Rev. May 2018

challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows:

        i.      The Defendant reserves the right to appeal any sentence that exceeds the statutory maximum; and

        ii.     This Office reserves the right to appeal any sentence below a statutory minimum.

20.    The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned case and agrees not to file any request for documents from this Office or any investigating agency.

## Defendant's Conduct Prior to Sentencing and Breach

21.    Between now and the date of sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. §3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

22.    If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (a) this Office will be free from its obligations under this Agreement; (b) this Office may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Federal Rule of Criminal Procedure11(c)(1)(C); and (c) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11. A determination that this Office is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement. In that event, neither the Court nor the Government will be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to Rule 11(c)(1)(C).

## Consequences of Vacatur, Reversal, or Set-Aside

23.    If a conviction entered pursuant to this Agreement is vacated, reversed, or set aside for any reason, then this Office will be released from its obligations under this Agreement, and any prosecution that is not time-barred as of the date of the signing of this Agreement (including any counts this Office has agreed to dismiss) may be commenced or reinstated against the Defendant, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement or reinstatement of such prosecution. The Defendant agrees

Rev. May 2018

to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date this Agreement is signed, and any applicable statute of limitations will be tolled from the date of this Agreement until 120 days after the vacatur, reversal, or set aside becomes final. The Defendant waives any defenses based on double jeopardy, pre-indictment delay, or the Speedy Trial Act.

### Entire Agreement

24.     This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties, and approved by the Court.

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

Sincerely,

Robert K. Hur
United States Attorney

By:

Jeffrey J. Izant
Sandra Wilkinson
Assistant United States Attorneys

I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

_9/12/18_
Date

_Gary Pinkowski Jr._
Gary Keith Pinkowski, Jr.

I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant. The Defendant advises me that the Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

_9/12/18_
Date

Katherine Tang Newberger, Esq.

Rev. May 2018

11

## ATTACHMENT A

## STATEMENT OF FACTS

*The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

Gary Keith Pinkowski, Jr. ("Pinkowski"), age 34, was a resident of Catonsville, Maryland. As a consequence of prior sex offense convictions in Maryland and Delaware, Pinkowski was registered as a Tier-III sex offender in both states.

On the date described below, John Doe was a six-year-old prepubescent boy.

On October 22, 2017, Pinkowski attempted to produce two images of child pornography involving John Doe at the Catonsville YMCA. Also on October 22, 2017, Pinkowski possessed at least two digital devices containing video and images of child pornography, which—as law enforcement later discovered—Pinkowski had obtained using public computers at the Catonsville Branch of the Baltimore County Public Library.

Attempted Production of Child Pornography

On October 22, 2017, John Doe and his father went swimming in the pool at the YMCA in Catonsville, Maryland. Afterward, John Doe and his father entered a shower stall in the "Boys" locker room. They were both wearing their bathing suits.

While John Doe and his father were showering, John Doe observed someone in the adjacent shower stall—later identified as Pinkowski—reach under the partition between the stalls and take a picture using a digital camera. When John Doe reported this to his father, they immediately exited the shower, changed into their clothes, and reported the incident at the YMCA's front desk. John Doe's father reported that, although they had not seen the person who took the picture, he had noticed a pair of black and green plaid swim shorts hanging over the person's shower stall.

YMCA staff members recognized the swim shorts as belonging to Pinkowski and alerted the Baltimore County Police Department ("BCPD"). But before BCPD officers could respond to the YMCA, Pinkowski rode away on his bicycle. When the officers arrived, the YMCA staff provided them with a description of Pinkowski, as well as the address that Pinkowski had listed on his YMCA guest registration form—309 Redwood Circle, Catonsville, Maryland, a men's shelter located less than two miles away.

Shortly thereafter, BCPD officers observed Pinkowski riding his bicycle near the shelter. Officers stopped Pinkowski outside the shelter and asked him where he was riding from. Pinkowski responded that he had been swimming at the YMCA. Pinkowski denied having taken pictures at the YMCA. Officers asked Pinkowski if he had any electronic devices with him, and

1

Pinkowski stated that he had a cell phone.  Officers sought and obtained Pinkowski's consent to search the phone, but discovered that it did not have a camera.

Accordingly, officers asked for Pinkowski's consent to search his person, including his bicycle and the backpack he was wearing.  Pinkowski consented to the search, and officers recovered a digital camera containing an SD memory card, a second SD card, and multiple USB drives.  Pinkowski stated that he had taken the digital camera out of his backpack while he was in the locker room at the YMCA, but that he had not taken any pictures inside the locker room. Pinkowski also consented to a search of the digital camera, and the memory card located within it, but officers did not find any video or images that appeared to have been taken at the YMCA.

Pinkowski was then escorted to an administrative office inside the shelter, where he was interviewed by officers from the BCPD Internet Crimes Against Children ("ICAC") Unit. Pinkowski was advised of his Miranda rights, waived them, and agreed to speak with officers. Pinkowski stated as follows:

The black and green plaid swimsuit was his.  Although he had locked his personal items in the separate Men's locker room at the YMCA, he entered the Boys locker room, brought his camera into a shower stall, and waited for approximately 30 minutes until someone entered the adjacent stall.  After he heard John Doe and his father enter the adjacent shower stall and begin showering, he reached under the partition between the stalls and, using his digital camera, took two pictures of John Doe, whom Pinkowski believed was approximately five to seven years old. After he heard John Doe tell his father that he saw the camera, Pinkowski left the shower stall, exited the Boys locker room, and returned to the Men's locker room.  While he was still at the YMCA, he viewed the pictures and discovered that, although he expected John Doe to be nude, he was, in fact, wearing swim shorts.  Before leaving the YMCA, he removed the memory card containing the pictures of John Doe from his digital camera, and inserted another memory card in its place.

## Possession of Child Pornography

ICAC officers also asked Pinkowski whether any of the electronic devices in his possession on October 22, 2017, contained child pornography.  Pinkowski stated that he knew there was, or recently had been, child pornography on two of the devices in his possession:  the 16GB SanDisk SD card (the "SD card") that had been in his camera when he took the above-described pictures of John Doe, and a 32GB Cruzer Glide USB drive (the "USB drive").  Accordingly, ICAC officers sought and obtained Pinkowski's consent to search the devices.

ICAC officers asked Pinkowski to explain how he obtained the child pornography. Pinkowski stated that he used the public computers at the Catonsville Branch of the Baltimore County Public Library.  The USB drive contained a file that could be used to run the Tor Browser, software that permits anonymized internet communication.  Pinkowski plugged the USB drive into a library computer, ran the Tor Browser file, and used it to access and view child pornography available on the internet.  Because the library computer would not permit downloads, Pinkowski used his digital camera to take video or pictures of the computer screen.

Rev. May 2018

During a forensic review of the SD card, law enforcement located the two images of John Doe described above. Law enforcement also located a 20-second video named "DSCF0070.avi," which depicts a computer screen that is itself playing a video showing an unknown prepubescent male engaging in sexually explicit conduct. In the video, the hand of what appears to be an adult male fondles the prepubescent male's scrotum and penis. The video ends with an adult male placing his erect penis up against the prepubescent male's buttocks.

During a forensic review of the USB drive, law enforcement identified a file used for running the Tor Browser, as well as four images of prepubescent minors engaging in sexually explicit conduct. For example, an image named "DSFC0011.jpg," which bears the date and time stamp 10/17/2017 at 3:49 p.m., depicts a nude prepubescent male lying on a bed with his legs spread open; his penis and scrotum are the focal point of the picture. Another image, named "DSFC0013.jpg," bears the date and time stamp 10/17/2017 at 3:50 p.m., and focuses on a close-up of a prepubescent male's anus and scrotum.

Baltimore County Public Library records indicate that Pinkowski had used library computers on 46 of the 90 days preceding October 22, 2017, and, specifically, that he was logged onto a library computer from 11:13 a.m. to 4:15 p.m. on October 17, 2017.

Because all of the digital devices were manufactured outside the state of Maryland, they necessarily were transported in and affecting interstate and/or foreign commerce.

Finally, on October 22, 2017, Pinkowski had at least one prior conviction under the laws of any State relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward, or the production, possession, receipt, mailing, sale, distribution, shipment, or transportation of child pornography. In 2011, Pinkowski was convicted in the Circuit Court of Maryland for Caroline County of soliciting a minor to engage as a subject in the production of child pornography, and of possession of child pornography. In 2004, Pinkowski was convicted in the Superior Court of Delaware for New Castle County of unlawfully dealing in child pornography, by means of a computer, and first-degree indecent exposure to a child less than 16 years of age.

SO STIPULATED:

Jeffrey J. Izant
Sandra Wilkinson
Assistant United States Attorneys

Gary Keith Pinkowski, Jr.
Defendant

Katherine Tang Newberger
Counsel for Defendant